Tanya Moore representing Mr. Henry Parker. Mr. Parker has raised an issue with regard to the administration of good time credit by the Parole Board and the Department of Corrections in this case. So this case is not about collateral consequences regarding a parole violation sentence. It's about how the Board and the Department of Corrections administered the good time statutory and rule scheme in place. At the time, he, well. And he's currently, as it were, at liberty. He's not incarcerated, but he's subject to parole. Yes, he is, until 2012. He's still on parole. Right. I don't understand how, given that he's on parole, a habeas petition is moot. I agree, Your Honor. Period. If somebody's on parole, they're under constraint. There is a direct, there's an injury with a remedy in this case in habeas because if, but for the incorrect good time application, he would not, his sentence would terminate. He would not be on parole today. So there is a direct consequence. If we leave him as is, however, how long is his current parole scheduled to last? It's 2012. I'm not sure which month. I think it may be March of 2012. Yeah. This may not be a legal determination, but it seems to me maybe supervision of this guy is a good idea. Well, unfortunately, the rules, in effect, at the time that, you know, he committed the crime, the 79 rules that apply to him, perhaps there was a different policy in the State at the time about the authority, the Parole Board's rules. And I should say, it wasn't statutory. It was the Parole Board itself and the Department of Corrections that cabined their own discretion under the statutory authority at the time. And if those rules were to be applied, as Mr. Parker requested, he would have been entitled to restoration of his meritorious credit, which would have given him a good time date prior to his release on parole in December of 06, which would have terminated his sentence in 2006. Now, assuming that we're willing to go with you so far as to say it's not moved, one of the problems that bothers me with respect to the good time and sort of ex post facto argument is that he has always accepted parole when offered, rather than saying, you know what, I'm staying here until the end of my time so that I'm entitled to be released on good time, and I reject the offer of parole. There was only one other time than the original parole date that he accepted it. And in that case, his technical violation resulted in just a 180-day sanction. It's when there's a few options the Board had back then. One of them was just to apply sanctions pursuant to a matrix. Another option was if they came in with a new law violation, they would apply a different matrix to set a new parole, a new term of imprisonment. The third option is to, was to deny re-release altogether and set a new parole date. It's when they do the second or the third options that they schedule a future disposition hearing, and the Board's rules at the time required it to restore the meritorious time and restore some or all of the statutory credit based on a recommendation from the Department of Corrections, which also treated meritorious time as to be awarded on parole violation, and then it would apply factors with regard to whether it would recommend restoration of the statutory good time. And those factors are related to disciplinary action. So the rules in effect at that time would have required the restoration of the good time. Well, your claim rises or falls on whether he would have refused parole, right? So a jailer comes to him and says, we're going to let you out early, but you've got to be on parole and obey the law. And he says, no, lock the door. I'm staying here. Has that ever happened? Well, it rises or falls on that to the extent that the parole board would have done and the department would have done what it was required to do in the rules in the first place, and they would have offered him a date. But he could have and would have. Well, he didn't. Three times. Three times he took parole, right? He took parole once or twice, twice. In fact, I'm not sure if it wasn't he was just given an administrative sanction the second time, the first time he took it. And this was in 19, I believe it was 1998. And so by the time he comes back in and they schedule that future disposition hearing, which they have the option of choosing not to re-release, he, at that point, is taking every effort he can to get them to calculate and administer the good time credit, because he knows that if they do so, he goes into state habeas, state habeas court doesn't assign the case to a judge, he files then an original habeas petition with the Oregon Supreme Court to get relief prior to this new release date so that he could get this good time date established. He doesn't have a duty to take release, but at the time the release date comes up in December of 06, he has already tried everything he could to get the good time date calculated. He has no duty not to mitigate his damages and take release at that time, just hoping in 06 that sometime down the road one of the courts would actually get the board and the department to administer the credit correctly. So he took it the original time. Then the next time it was a parole sanction of 180 days. It's the following time in 05 where the board said, oh, we're not going to just treat this as a sanction case. We're going to look at we're going to give you a future disposition hearing. We are going to consider not reinstating parole. And from that date forward, he did everything he could to get the board and the department to administer the good time credit correctly because he knew he would have been released prior to the December date. If they had tried to release him prior to the December date, he would have said no. It's logical. It's logical he would have said no because he knew that that good time date was coming up. If they, for instance, tried to release him in July. He'd say, don't let me out. That's right. I want to stay in jail. There are many parole, there are many inmates that were subject to the pre-I think it's 1998 rules, but the Bollinger decision established that Oregon law allowed them to refuse parole so that they could anticipate their good time date and terminate their sentences with that good time date. I'm going to leave some time. Okay. Thank you. May it please the Court and Counsel, Jeremy Rice on behalf of the State Board of Parole and Post-Prison Supervision. Brief introduction. Plaintiff's claim is that he seeks the restoration of good time credits. The district court dismissed this case as moot because Petitioner was released on parole and under Oregon parole law and Oregon good time, the law of Oregon good time credits, good time credits play no role in a paroled inmate's or former inmate's sentence calculation. Essentially, once Petitioner was released on parole, good time credits could serve no purpose in determining either the length of, in determining the length of time that he was in. But that goes to the merits of the argument. I mean, he is under constraint, that is to say he's on parole. He is. And he brings habeas to free himself from the constraint. He. And therefore, to me, is not moot. Now, he may lose, but it's not moot. Well, he has brought habeas to seek the restoration of good time credits. The question is whether. Which would, with the consequence, if he wins, that he's released from any supervision from, under, and parole. No. I believe that's not the case. And I think that's why the district, the district court dismissed as moot. Because the question, I think. I mean, if he's, if he wins, he's still under parole supervision? The restoration of good time credits right now would not decrease the amount of time he has to serve on parole. I guess I'll hear from the other side as to whether or not the remedy that she seeks on behalf of her client, in her view, would release him from supervision under parole. Assuming that he was validly, legitimately released on parole in 2006, which he was, he was released on parole, the restoration of good time credits right now, good time credits do not serve to reduce the length of time served on parole. The only theory I thought was that if he had been properly given good time credit, he would have had a, what is it, December release date, free of parole. And that he wasn't given that choice, he couldn't elect to wait out the time as we went through the dialogue just before he got up. And that's the purpose of wanting the good time credits. Not to adjust his parole, apply them to parole, but to reconfigure what his release date would have been so that he could have refused parole and decided to opt for the additional in-prison time as a tradeoff for not having to be on parole. Now, I think it's significant that at the time he sought habeas relief, at the time that he filed the petition, in this case he was an incarcerated inmate who hadn't been paroled yet. That is, at that time. I understand, but the point is he knows, if you're playing the system, that if he, when he's back in and gets good time credits, that may be unlawful, but my understanding is if he has good time credits properly applied, he will have a good time credit release date. Is that correct? At this time, if you were to have. Then, when he went back in and if they hadn't applied, if they'd applied the preexisting one. You mean the time when he was, when his parole was revoked, which I believe was in 2004 or 2005. At the time when his parole was revoked, if he had his good time credits restored, he would receive, it would, he would, he'll have a good time date no matter what. It would change, it would advance his good time date. If he were to have some of those credits restored, it would advance his good time date. So in seeking habeas relief, what he was seeking was, as a remedy, restore those good time credits, which will have the effect of advancing my release date, so that I will have a date referred to as my good time date or my earned time date, which is the date I will be released, unconditionally. My sentence will expire. At the time that he's released on parole, under Oregon good time law, those good time credits go away. That is, they no longer, that good time date that he would have disappears. It becomes irrelevant. But her argument is, knowing that, which brings us back to where I thought the case is currently postured. I think it will, yes. Is that if they had given him that earlier, that advance date, he could have then said, I'm not going to accept parole because I want to walk out the door unsupervised. I'll stay in a little longer in the joint, but I want to get out without parole. So I'll just wait it out now that I've got my December date. I believe that's correct. Okay, so that means then that he's got a remedy that could be granted. If, in fact, he should have had that early release date, he could have been released without parole, and the State precluded him from having that option by inappropriately applying or refusing to give good time credits. No, and I think the way to understand our argument, I think, is to understand sort of where we, I think that what you've said is correct, and it's a correct characterization of the two parties' arguments. But I think it helps to characterize where in the analytical framework that argument falls. Our claim is essentially that step one, the immediate remedy that Petitioner seeks right now will not have any effect under Oregon DOC rules and under Oregon law. That is, the restoration of good time credits right now, assuming nothing else, won't do anything. It won't advance his parole expiration date. It won't have that effect. So where we go from there is that would say that this is essentially a moot case, if that was all we knew. But where the argument falls then is to the second step in this mootness analysis, which is, is there some collateral consequence? I think that Petitioner's argument is a collateral consequences argument to say, had the Board of Parole done this correctly, I would have had these good time credits restored, I would have had a good time release date in 2006, I could have accepted that, and I would have been released unconditionally. Consequently, I would not be on parole right now, which means that my current parole conditions are the, quote, unquote, collateral consequence of the Board's unlawful action. But collateral consequences cannot be speculative. Collateral consequences have to be more concrete than that. And our argument is essentially, and to give a little background, as I think the Court is aware, Petitioner would have had a choice at the time that, had these good time credits been restored, he would have had a choice. That is, the Board of Parole's policy is to set a parole release date in advance of an inmate's good time date. The reason for that is that the Board of Parole's policy is to prefer, to set a preference for parole release rather than unconditional release. If it's at all possible, the Board will set a release date far enough in advance of a good time date to try to create an incentive for an inmate to accept parole rather than to wait it out for good time credits. With inmates who do not have the choice whether to accept or reject parole, the Board doesn't have to create any incentive. They'll set the parole release date a day or two before the good time date and force parole. Otherwise, they have to be a little more creative. And you can see in this case that the Board was setting parole release dates in advance of upcoming good time dates to give the Petitioner the choice of which one he wants to take. So his collateral consequences argument is essentially that, had the Board correctly restored these good time credits, I would have had a good time date on date X, whatever it was, December 2006, I believe. I would have on that date been unconditionally released. We say no. What would have happened is, sometime before that, the Board of Parole would have set a parole release date and you would have been faced with a choice. Do you want to be released on parole right now or do you want to wait X number of months, however long that was, and wait for your good time date? Right. And his argument is, I'm no dummy. I know that I violate conditions of parole or I'm likely to do so. So it's greatly to my advantage to wait until the expiration of my time and get out on good time so I don't have to have parole. It may very well be to his advantage, and I don't disagree that it would, but we don't always act rationally in our minds. And he might or might not have. And he may or he may not have. And our point is that there's nothing in the record to demonstrate one way or the other what would have happened. For one, I don't know when the Board of Parole would have set his good time or his parole release date. It could have been at two days. It could have been several months. How long is long enough for this particular inmate to look and say, eh, that immediate freedom right now sounds good? I don't know the answer. And so I don't know, A, I don't know where the Board of Parole would have set that parole release date, and, B, I don't know, given that, whether he would have accepted it or not. What should he have done to make the record? An affidavit, potentially. Affidavit when? I think he could have, potentially could have done two affidavits during the mootness litigation, an affidavit from the Board of Parole establishing when the release date would have been and an affidavit from him. How would they know? What was that? How could they go back and recreate? I mean, why would that be credible? I'm not exactly sure who he would ask, and I'm trying to think right now if there are any board rules that would set up a guideline of when the parole release date would be. I don't believe that there are. Are you saying that this litigant could have gone to the parole board and said, I want you to give me an affidavit? I think his attorney arguably could have. I don't know that he could have individually. I don't know why his attorney could have. And the State has affidavits from several DOC and Board of Parole, or at least one lengthy affidavit from a DOC official who explains all of these calculations. So what's the other affidavit? I think the main affidavit he would need is an affidavit from himself explaining what he would have done under various circumstances. Had the Board of Parole offered me a good time release date at any point between date A and date Z, I would have accepted that release date rather than waiting out for a good time date. But I don't believe there's any affidavit or any factual record of that whatsoever. If we were to disagree with the district judge's conclusion that this case is moot, say, no, this is not moot, he's trying to get out from under his parole and send it back, I guess this would be then, it's odd to say fact-finding when all of this is so speculative, but I guess so he'd send it back to the district court for fact-finding. I believe you could send it to the district court for fact-finding relative to the mootness question. No, you're not going with me. I'm saying it's simply not moot because he's under the constraint of parole. And whether or not he's entitled to be out from under the constraint goes to the merits, and that goes to these questions that you've just been discussing, it seems to me, quite cleanly. Yes, and I think that the remedy in this case, if you disagree with the state and disagree with the district court's mootness conclusion, I think the appropriate remedy from this court, and I apologize, I just noticed my red light is on. No, you don't find it. I think the appropriate remedy from this court would be a remand for a hearing on the merits or there may be other potential procedural issues that haven't been raised. There might be procedural default issues or exhaustion issues. And if you hurry in the district court after a remand, the district court might or might not decide the question before the parole ends. May or may not. I believe counsel's correct that parole is scheduled to end in 2012. I'm not sure if that's January 2012 or December 2012. Either way, it is fast approaching on 2011, so it's possible that that would take that much time. But, again, I do believe the appropriate remedy from this court, if you disagree with the district court's conclusion, is a remand for further proceedings. But our ultimate conclusion is that Petitioner's collateral consequences argument is too speculative to support his contention and that the district court correctly decided this case. If there are no further questions, that's all I have. Thank you. Maybe you know the exact date on which the parole would end if the parole continues. The 2012 date? Yes. I believe it's March. Okay. I'm sorry. Okay. That's legally irrelevant. Right. Well, of course, if the court, and I think you will and should, remand because the mootness decision is incorrect. But I would like the court to request that the district court do an expedited review of the merits as part of your order in the case. Just a couple of things. One of the intellectual issue approaching this is part of the problem. The injury or the remedy flows from the injury. You've got to first look at what the injury is when you're applying a mootness analysis to determine what the remedy is. And I think, unfortunately, the district court skipped straight to the remedy. In this case, we've set forth that the injury includes the lack of credit for the meritorious good time, which would have put his date in August of 06. Okay. So even prior to the release date. And so there has to be an inference that he would have chosen not to be released. But in addition, I want to address that issue about the record this way. The district court asked for a collateral consequences report based on a minute order. I'd never considered it to be collateral consequences. I did a report saying, you know, styled as collateral consequences, but argued that there was a direct consequence to the agency's failure to apply the law correctly in this case. It was only when the district court issued its order did the issue come up about whether Mr. Parker would have or could have termed down parole. Bollinger was not briefed in front of the district court because it was only in the district court's order itself in which the district court speculated that he could  So there was no opportunity to submit an affidavit in the case because it wasn't really briefed. A minute order was issued requesting show cause. We responded, and the Bollinger issue was never, never briefed. So whatever it's worth, that's the inferences should be from this record and from the nature of the injury itself that Mr. Parker would not have accepted parole if it would release, if it was offered earlier. And lastly, the habeas, the equitable remedies available in habeas, I do believe allow the district court to tell the parole board, to tell the State, go calculate the good time credit and release if that good time date would have preceded that December 06 date, which is what we believe it would have done. Thank you. Thank you. I thank both sides for your arguments. The case of Parker v. Bullock is now submitted for decision. The next case on the argument panel, United States v. Buckles.
judges: Bury, Fletcher W. , Fisher